[Crim. No. 9712.   Second Dist., Div. Two.   Feb. 9, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES
EDWARD CURRY et al., Defendants and Appellants.

George L. Vaughn, Jr., for Defendants and Appellants.

Stanley Mosk and Thomas C. Lynch, Attorneys General,
William E. James and Vincent W. Thorpe, Assistant At-
torneys General, for Plaintiff and Respondent.

HERNDON, J.—Defendants Curry and James appeal from
the judgments entered against them following a nonjury trial
that resulted in their conviction of the crime of first degree
murder.[1]

The evidence herein, which was presented by way of the
transcript of the testimony given at appellants' preliminary
hearing, indicates that on June 12, 1963, at approximately
9:45 p.m., one Clyde Bollinger, who was working as the
attendant at a gas station in Compton, California, staggered

---

[1]At the time the notice of appeal was filed herein, no judgment had
been entered as to appellant James. However, following proceedings held
in accordance with Penal Code, section 1203.3, appellant James was
granted probation under order entered March 17, 1964. This order being
appealable (Pen. Code, § 1237), we shall treat his appeal as taken from
this order. (Cal. Rules of Court, rule 2(c).)

into a nearby shop bleeding from the nose, eyes and mouth and holding his stomach. He informed the persons there present that he had been shot ''over by the register'' by a colored man who had run away in a northerly direction.

One of these persons testified that he had hurried to a telephone to call an ambulance but that by the time he returned, the victim was dead. He died from a gunshot wound in the chest which penetrated his heart and right lung. The victim appeared to have been in good health and condition when he talked to this witness five minutes earlier. This witness believed that the victim had used the word ''register,'' although he admitted it could have been ''rest room,'' since the police said that the pool of blood was nearer thereto.

The only other evidence introduced against the three defendants found guilty of this crime (only two of whom have appealed) is their individual confessions. Each of these confessions was received only as against the person who made it and not against the others. No serious contention was made that they were involuntary, nor was this issue originally raised on this appeal.

As initially presented, the primary assignment of error related to the sufficiency of the evidence, i.e., appellants contended that although the corpus delicti of murder had been established independently of their confessions, nonetheless they could not be found guilty of murder in the first degree because the corpus delicti of robbery was not proved *aliunde* their confessions. This argument has been rejected in *People* v. *Cooper*, 53 Cal.2d 755, 765-767 [3 Cal.Rptr. 148, 349 P.2d 964]; *People* v. *Miller*, 37 Cal.2d·801, 806 [236 P.2d 137]; and *People* v. *Williams*, 151 Cal.App.2d 173, 177-178 [311 P.2d 117].

However, prior to the filing of appellants' closing brief herein, our Supreme Court filed its original opinion in the case of *People* v. *Dorado* (Cal.) 40 Cal.Rptr. 264. The applicability of this decision was then urged by appellants and for that reason the submission of this appeal was deferred pending the filing of the Supreme Court's decision upon its rehearing of the *Dorado* case. This decision has now been filed (*People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]), and its direct application to the instant case is clearly indicated. The court therein expressed the now applicable law as follows:

''We conclude, then, that defendant's confession could not properly be. introduced into evidence because (1) the investi-

gation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he had waived these rights.''

Regarding the statements made by appellant Curry, Officer Correa testified as follows: ''Q. Now, Officer, when and where did this conversation with the defendant Curry take place? A. It took place in my office, Compton Police Department, on July 17th, 1963, during the late morning hours. Q. Who was present during that conversation? A. James Curry and myself. Q. I ask you whether or not any and all statements made by the defendant James Curry at that time were made freely and voluntarily? A. They were, sir. . . .

''Q. Would you tell the Court then, Lieutenant Correa, the sum and substance of that conversation only as it pertains to this case? A. Yes, James Curry stated that on that particular day he was at Johnny Batts' house sitting in Johnny Batts' vehicle, a '53 Buick, as I recall. Seated in the vehicle with him, he states, were Johnny Batts, William James, Lawrence Roberts and himself. They discussed robbing somebody. He said that they all agreed as to what was to happen. He stated that Johnny Batts was to drive the vehicle. He was to hit the man with his fist. William was supposed to grab the money from the box, and Lawrence Roberts was to hold the gun on the man. He further stated that he went into his home and secured a pistol that he described as belonging to a Jimmy Givens, stating that Jimmy Givens had given him this gun and told him to hold it for him, or let it stay at his house for a few days. He further stated that they drove about Rosecrans, near Rosecrans and Alameda, and that Johnny Batts had parked the vehicle down a side street, at which time three of them, James Curry, William James, and Lawrence Roberts had gotten out of the vehicle and walked to the gas station. He further stated that the man at the gas station had reached for his back pocket, as I recall, and Lawrence had shot him. Then he and the other two persons ran back to the car where they were driven home by Johnny Batts. That is my recollection of the conversation held with the defendant.''

The officer testified to the statements made by appellant

James as follows: ''Q. Now, Lieutenant Correa, I ask you whether or not you had an occasion to have a conversation with the defendant herein, William Louis James? A. That is correct, sir. Q. And when and where did that conversation take place? THE COURT: The record will show that this is applicable to the defendant James only. A. The conversation I had with William James was held in my office, the Compton Police Department, on July 17th, 1963, in the early afternoon hours. I think it was just shortly after noon. MR. MARIN: Q. And who was present during that conversation? A. William and myself. Q. I ask you whether or not any and all statements made by the defendant James at that time were made freely and voluntarily? A. That is correct, sir. Q. Would you tell the Court the sum and substance of that conversation only as it pertains to this case? A. Yes. William stated that he had been at Johnny Batts' house and that at that time they had been sitting in Johnny Batts' vehicle. He also described it as a '53 Buick. Further, that all of them were talking about hitting somebody. I asked him what 'hit' meant, and he said, 'Well, to rob somebody.' At this time, he stated that it was agreed that he was to grab the money from the box. James Curry was supposed to hit the man over the head with a brick, I think he told me a brick or a rock, and that Lawrence Roberts was to hold a gun on the man in case there was any trouble. And that Johnny Batts was to drive them to the location and then wait for them and drive them back. He stated that they drove about the Alameda area, and that they pulled down the street and parked, at which time he, James Curry, and Lawrence Roberts got out of the vehicle and went toward the gas station. He further stated that the man at the gas station had reached for something in his hip pocket, at which time he was shot, and then he fled. He ran back to the location where Johnny Batts had parked and was driven to James Curry's home where James took the gun and hid it in the bushes. This is what I can recall of the conversation.''

Under the four-point rule enunciated in *People* v. *Dorado, supra,* 62 Cal.2d 338, these statements were inadmissible since they clearly constituted confessions; they were the result of a process of interrogation that lent itself to eliciting such statements; appellants were in custody and the investigation had focused upon them; and the record here presented contains no evidence tending to establish that they had been effectively informed of their right to counsel or

their absolute right to remain silent. There was no evidence establishing that they had waived these rights.

The judgment and order appealed from are reversed and the cause is remanded.

Roth, P. J., and Kincaid, J. pro tem.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 6, 1965. Mosk, J., did not participate therein.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.